UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SCOTT MACKENZIE,                                            :
                                                            :
                                    Plaintiff,              :
                                                            :        22-CV-7951 (VSB)
               - against -                                  :
                                                            :        **OPINION & ORDER**
                                                            :
WAYPOINTE PARTNERS MANAGEMENT                               :
LLC, STEPHEN JOHANSEN, and                                  :
WAYPOINTE LIMITED,                                          :
                                                            :
                                    Defendants.             :
                                                            :
------------------------------------------------------------X

Appearances:

Greg Mansell
Mansell Law
Columbus, OH
*Counsel for Plaintiff*

Nicholas Robert Bittner
Christopher Quincy Davis
The Law Office of Christopher Q. Davis, PLLC
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Before me is a motion to dismiss filed by Stephen Johansen ("Johansen"), Waypointe Partners Management ("WPM"), and Waypointe Limited ("WL," together, "Defendants"). (Doc. 24.) Because Plaintiff has adequately pled all claims except for his claim for fraudulent inducement and I do not find that any of Plaintiff's claims are time barred, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

I. **Factual Background**[1]

WPM and WL are companies that were founded in 2012 to provide investment advisory services. (Doc. 12 ("Am. Compl.") ¶¶ 10, 20.) WPM and WL were under common management, control and ownership, and shared employees and facilities. (*Id.* ¶ 18.) Plaintiff became an employee of WPM, WL, and Johansen in July 2014. (*Id.* ¶¶ 21.) Plaintiff performed work for both WPM and WL from a shared office space in Rye, New York, using an email address with the domain "@waypointepartners.com." (*Id.* ¶¶ 13, 14, 16.)

"WPM had 1001 equal 'Ownership Units' that were allocated among its members." (*Id.* ¶ 23.) In August 2014, Plaintiff invested $150,000 for 125 units in WPM. (*Id.*) The two cofounders, Johansen and Jason Zhao ("Zhao"), took 501 units and 375 units, respectively. (*Id.*) At all times relevant to this action, Johansen was the managing member of WPM and majority owner of WL. (*Id.* ¶ 11.) Johansen and Zhao agreed they would each take an annual salary of $100,000, which would be deferred until WPM could afford to make the payments. (*Id.* ¶ 24.) In mid-2016, Zhao stopped working full-time for WPM and WL, so WPM clawed back and redistributed 20% of Zhao's equity. (*Id.* ¶ 33.) After the redistribution, which was agreed to by the members of WPM, Johansen owned 66%, Zhao 17.5%, and Plaintiff 16.5% of WPM. (*Id.*) In September 2016, Zhao left WPM and WL and sold his remaining interest back to WPM. (*Id.* ¶ 34.) Johansen took his pro rata share, or 14%, of Zhao's equity and sold the remaining 3.5% interest to his parents and another couple, without Plaintiff's consent or knowledge. (*Id.* ¶ 35.)

For the entirety of his employment with Defendants, Plaintiff worked a total of 70 to 80

---

[1] The facts contained in this section are based upon the factual allegations set forth in the first amended complaint ("Amended Complaint") filed by plaintiff Scott Mackenzie ("Plaintiff" or "Mackenzie"). (Doc. 12.) I assume the allegations in the Amended Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

hours or more each week.  (*Id.* ¶ 50.)  Plaintiff was not paid any compensation from 2014 to 2017.  (*Id.* ¶ 31.)  In 2018 and 2019, WPM paid Plaintiff $12,500 and $30,000, respectively.  (*Id.* ¶ 39.)  Johansen refused to share WPM's financial records with WPM's members.  (*Id.* ¶ 38.)  Plaintiff did not have authority or decision-making ability, as Johansen had full authority over all employees, facilities, and business decisions.  (*Id.* ¶ 18.)

In August 2019, Johansen terminated Plaintiff's employment, but requested that he continue to work for four months to transition his responsibilities, which Plaintiff agreed to do.  (*Id.* ¶ 40.)  When Plaintiff left WPM, he remained a member with 16.5% ownership interest.  (*Id.*)  In February 2021, Johansen offered to buy Plaintiff's equity.  (*Id.* ¶ 42.)  Plaintiff explained that he would consider selling his units if he was provided WPM's financial records.  (*Id.*)  Upon review of the financial records, Plaintiff became aware that although WPM was not paying him his salary, Johansen had paid himself a salary in 2019 and 2020.  (*Id.* ¶ 43.)

## II.     Procedural History

Plaintiff initiated this action by filing a complaint on July 11, 2022 in New York Supreme Court, Westchester County.  (Doc. 1-1.)  On September 16, 2022, Defendants removed the action to this Court.  (Doc. 1.)   On September 23, 2022, WPM and Johansen filed a motion to dismiss, (Doc. 4), along with a memorandum of law, (Doc. 5), and two declarations in support, (Docs. 6–7).

On October 7, 2022, Plaintiff filed the Amended Complaint, (Doc. 12), which rendered the motion to dismiss moot.  On December 5, 2022, Defendants filed a motion to dismiss, (Doc. 24), along with a memorandum of law, (Doc. 25 ("Mem.")), and two declarations in support, (Docs. 26–27.)[2]  On January 9, 2023, Plaintiff filed a memorandum of law in opposition

---

[2] The Declaration of Stephen Johansen, (Doc. 26), contains several factual assertions that differ from those pled in

to the motion to dismiss.  (Doc. 32 ("Opp'n").)  On January 30, 2023, Defendants filed a reply memorandum of law in support of their motion to dismiss.  (Doc. 40 ("Reply").)

### III.     Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (citation omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

---

Plaintiff's Amended Complaint, (*compare* Doc. 12, *with* Doc. 26).  Defendants cite to this declaration for factual support for their motion to dismiss.  (Doc. 25 ("Additional relevant facts are taken from a Declaration of Stephen Johansen.").)  Because courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim," I do not consider any factual assertions made outside of the Amended Complaint in deciding the instant motion.  *Nakahata v. N.Y.—Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013) (cleaned up).

IV.     **Discussion**³

   A. *The FLSA and the NYLL*

   **1. Applicability of the FLSA and the NYLL**

WPM asserts that "Counts 1-5 of Plaintiff's complaint against Defendants should be dismissed because Plaintiff is a non-employee partner as a matter of law under the New York Labor Law and the Fair Labor Standards Act." (Mem. 14.)⁴ Plaintiff counters that he was an employee. (Opp'n 7.) Pursuant to the FLSA, an "employee" is "any individual employed by an employer," 29 U.S.C. § 203(e)(1), an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d), and "employ" means "to suffer or permit to work," *id.* § 203(g). Whether an employer-employee relation exists is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (internal quotation omitted.) "The mere fact that a person has a particular title—such as partner, director, or vice president—should not necessarily be used to determine whether he or she is an employee" for statutory purposes. *Clackamas Gastroenterology Assocs., P.C.*, 538 U.S. 440, 450 (2003). "The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988)). In *Brock v. Superior Care, Inc.*, the Second Circuit

---

³ In briefing, Defendants argued that WPM was not properly served and therefore claims against them should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(2). (Mem. 11.) However, after submitting their briefing, Defendants "consent[ed] to service of the Summons and Amended Complaint by email." (Doc. 35 at 1.) On January 20, 2023, Plaintiff filed an affidavit of service stating that WPM was served by email. (Doc. 39.) Accordingly, I need not address the argument that WPM was not properly served, as it has become moot.

⁴ Defendants seem to concede that the FLSA and the NYLL have consistent interpretations of what constitutes an "employee." (Mem. 15 n.3.) *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 534 (2d Cir. 2015) (explaining that the FLSA and the NYLL "define 'employee' in nearly identical terms).

5

identified the following relevant factors for courts to consider in determining whether an individual is an employee:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

840 F.2d at 1058–59.

Defendants compare this action to *Godoy v. Restaurant Opportunity Center of New York, Inc.*, 615 F. Supp. 2d 186 (S.D.N.Y. 2009). In *Godoy*, the court found that "Plaintiffs were not, as a matter of economic reality, the employees of Defendants" because "[l]ike partners at a firm, Plaintiffs, as putative co-owners of the business they were working to create, assumed the risks of loss and liabilities of the venture, and had a real opportunity to share in its profits upon success." *Id.* at 195 (internal quotation marks omitted). I find that the facts in *Godoy* are not analogous to the factual allegations here. First, *Godoy* involved individuals working with a "not-for-profit corporation to develop a business that they would co-own." *Id.* at 194. Plaintiff's Amended Complaint in this matter, however, describes five years of employment for an already established for-profit corporation. Second, the plaintiffs in *Godoy* were never promised a salary, and instead were told that their "sweat equity" would result in their co-ownership of the restaurant. *Id.* at 188. Here, in contrast, Plaintiff invested cash for his equity and was promised an annual salary as compensation for his work. (*Id.* ¶¶ 23–24.)

The reasoning in *Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013), can be applied here by analogy. In *Irizarry*, the Second Circuit held that "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an 'employer' without some involvement in the company's employment of the employees." *Id.* at 111. Rather, the ultimate test for determining

whether someone is an "employer" is the "economic reality" test. *Id.* Similarly, the dispositive inquiry into whether a plaintiff is an "employee" as defined by the FLSA, as relevant here, is the "economic reality" test.[5] A categorical determination that an individual with any ownership interest in a company is never an "employee" under the FLSA seems to be the kind of "technical" distinction that the Second Circuit eschews. *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008). Ownership interest in a company alone is insufficient to preclude a finding that a plaintiff is an "employee" under the FLSA.

The text of the FLSA does not provide otherwise. Under the FLSA, an employee's "wage" includes "board, lodging, or other facilities." 29 U.S.C. § 203(m). The Department of Labor has interpreted "other facilities" not to include "[s]hares of capital stock in an employer company, representing only a contingent proprietary right to participate in profits and losses or in the assets of the company at some future dissolution date" in this context. 29 C.F.R. § 531.32. In fact, the FLSA expressly excludes certain employees from the statute's overtime and wage requirements, including employees who work in an "executive" capacity. 29 U.S.C. § 213(a)(1); *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020) ("[T]he FLSA exempts from the overtime requirement 'employees employed in a bona fide executive or administrative . . . capacity.'" (citing 29 U.S.C. § 213(a)(1))). Exempt business owners are employees who "own[] at least a bona fide [twenty]-percent equity interest in the enterprise in which the employee is employed . . . and who is actively engaged in its management.'" *Paschalidis v. Airline Rest. Corp.*, No. 20-CV-2804, 2021 WL 5013734, at *2 (E.D.N.Y. Oct. 28, 2021) (quoting 29 C.F.R. § 541.101). These exemptions also exist and are substantially similar under the NYLL. *Tamayo v. DHR Rest. Co.*, No. 14-CV-9633, 2017 WL 532460, at *5,

---

[5] Indeed, Defendants concede that the *Godoy* court applied the "economic reality" test. (Mem. 17.)

*5 n.5 (S.D.N.Y. Feb. 3, 2017) ("The NYLL has a substantially similar overtime provision with an analogous exception for executives." (citing N.Y. Lab. L. § 651(5)(c))). These statutory provisions evince an intent to include business owners with less than a twenty percent share, or who are not involved in management, within the ambit of the FLSA's wage and overtime protections. Although Defendants argue that Plaintiff is a non-employee based on his own allegations in the Amended Complaint, they do not argue that Plaintiff is an exempt employee.

Accordingly, although Plaintiff owned a percentage of the company, I do not find that sufficient to consider him a non-employee under the FLSA. Plaintiff pleads that Johansen "supervised his work, set the rules and regulations for his work, . . . had the ability to terminate [his] employment" and "handled all analytical work, made all Fund investment decisions and managed all other aspects of the Companies." (Am. Compl. ¶¶ 25, 30.) In contrast, Plaintiff did not have ultimate control over "the manner or amount he was paid" or how to "distribut[e] profits or mak[e] any decision on behalf of WPM or WL." (*Id.* ¶ 39.) Accepting the facts as pled in the Amended Complaint as true, Plaintiff has plausibly alleged that he was an employee under the "economic reality" test. Accordingly, because Plaintiff plausibly alleges he was an employee, WPM's motion to dismiss counts one through five is DENIED.

### 2. Plaintiff Plausibly Alleges Claims Under the FLSA and the NYLL

WPM also argues that Plaintiff's claims must fail because "Plaintiff fails to allege the number of hours worked sufficient to plausibly plead either overtime or minimum wage violations." (Mem. 20.) I disagree.

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

Overtime claims brought pursuant to the NYLL "are evaluated under the same standards as claims under the [FLSA]." *Hobbs v. Knight-Swift Transp. Holdings, Inc.*, No. 21-CV-1421, 2022 WL 118256, at *3 (S.D.N.Y. Jan. 12, 2022). A plaintiff is "not required to keep careful records and plead their hours with mathematical precision." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).

Here, Plaintiff's employment with WPM and WL began "in or around July 2014" and ended at the end of 2019. (Am. Compl. ¶¶ 21, 40.) Plaintiff "worked a total of 70–80 or more hours each week for the entirety of his employment with Defendants, with the exception of two to three weeks each year." (*Id.* ¶ 50.) For this work, Plaintiff was paid nothing from 2014-2017; $12,500 in 2018; and $30,000 in 2019. (*Id.* ¶¶ 31, 39.) "Defendants were aware that Plaintiff worked more than 40 hours per workweek but did not receive overtime compensation . . . for hours worked in excess of 40 per workweek." (*Id.* ¶ 56.) Nor did they pay him minimum wage for all hours worked. (*Id.* ¶ 70.) From 2014 through 2017, Plaintiff did not receive the minimum wage or any wages since he was not paid anything. Assuming the facts in Defendants' favor, that (1) Plaintiff worked 70 hours a week (instead of 80 hours/week) and (2) did not work for three weeks in each year (instead of two weeks) and therefore worked 49 weeks, Plaintiff worked 3,430 hours each year (70 hours/week * 49 weeks). This would make his hourly wages approximately $3.64 in 2018 ($12,500 / 3,430 hours) and approximately $8.75 in 2019 ($30,000 / 3,430 hours). Therefore, Plaintiff's Amended Complaint pleads sufficient factual information to determine "the approximate number of hours worked for which the employee did not receive minimum wages." *Zhong v. Aug. Aug. Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007). However, Plaintiff does not have a FLSA claim for unpaid wages from 2014–2017. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("[T]he FLSA

9

does not provide a cause of action for unpaid gap time." (citation omitted)).  Unlike the NYLL, which does cover unpaid-wage claims, the FLSA only covers claims for minimum wages and overtime wages.  *Id.* at 201–02 (citation omitted).  Plaintiff may not "bring what is akin to a nonpayment or breach of contract claim" under the FLSA.  *Barone v. Inspire Summits LLC*, 2022 WL 3139124, at *2 (E.D.N.Y. Aug. 4, 2022) (citation omitted)); *see also Vicente v. Ljubica Contractors LLC*, No. 18-CV-419, 2025 WL 100897 (S.D.N.Y. Jan. 14, 2025).  Accordingly, Defendants' motion to dismiss for failure to state claims under the FLSA and the NYLL is GRANTED IN PART and DENIED IN PART.

### 3. Statute of Limitations Under the FLSA

Defendants argue that Plaintiff's FLSA claims are untimely.  (Mem. 20.)  Under the FLSA, the statute of limitations is two years, or, if the violations were "willful," three years.  29 U.S.C. § 255(a).  Plaintiff stopped working for Defendants at the end of 2019, (Am. Compl. ¶ 40), and filed a complaint alleging FLSA violations in July 2022, (Doc. 1-1 at 3).  Therefore, Plaintiff's claims are only timely if the violation was willful.  "[A] plaintiff must allege facts at the pleading stage that give rise to a plausible inference that a defendant willfully violated the FLSA for the three-year exception to apply."  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315 (2d Cir. 2021).  "An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act."  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  "[I]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful."  *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995) (cleaned up).  In other words, "[m]ere negligence is insufficient."  *Young*, 586 F. 3d at 207.

Plaintiff pleads that Defendants (1) were aware he was not being paid a salary, overtime wages, or minimum wage, and (2) knew or should have known of the FLSA's wage-and-overtime requirements. (Am. Compl. ¶¶ 56, 57, 72.) Plaintiff also describes raising "numerous complaints about compensation and requests to be paid" which "were ignored or dismissed." (*Id.* ¶ 55.) Defendants argue that Plaintiff's "general complaints about lack of salary compensation—as opposed to specific complaints about minimum wage or overtime pay—are insufficient and do not suggest Defendants had any awareness that Defendants' actions violated or could violate the FLSA." (Doc. 40 at 9.) I disagree. "Prior complaints to an employer regarding an overtime violation are sufficient to put the employer on notice about its obligations under the FLSA and thus establish willfulness." *Brain v. Execu-Search Grp., LLC*, No. 22-CV-8219, 2024 WL 838085, at *4 (S.D.N.Y. Feb. 28, 2024) (internal quotation marks omitted). An employer can recklessly disregard the illegality of their conduct regardless of whether their employee specifically identifies the FLSA when raising complaints. For example, in *Markovic v. Milos Hy, Inc.*, the court found that Defendants' conduct was willful in part because they ignored Plaintiffs' complaints about underpayment of tips. No. 22-CV-1412, 2023 WL 4763807, at *7 (S.D.N.Y. July 26, 2023). Accordingly, I find that Plaintiff pleads facts that give rise to a plausible inference of willfulness, such that his claim may proceed. Accordingly, Defendants' motion to dismiss the FLSA claims as untimely is DENIED.

### B. *Breach of Contract*

Defendants argue that Plaintiff has failed to state a claim for breach of contract pursuant to Rule 12(b)(6). (Mem. 23.) Under New York law, a plaintiff claiming a breach of contract must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orchard Hill Master Fund*

11

*Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)). "[O]ral agreements are binding and enforceable absent a clear expression of the parties' intent to be bound only by a writing." *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 109 (2d Cir. 2003).

Plaintiff sufficiently pleads a claim for breach of contract. Plaintiff describes an agreement made between himself, Zhao, and Johansen, that they would each be compensated $100,000 for their work "when WPM could afford to" pay them. (Am. Compl. ¶ 24.) Defendants incorrectly assert that the alleged agreement was "too broad and undefined to form an enforceable contract." Agreements to defer salary have been found to be sufficiently definite enforceable contracts, even when the exact time of payment is not established. *See, e.g.*, *Roldan v. Second Dev. Servs., Inc.*, No. 16-CV-2364, 2018 WL 1701938, at *7 (E.D.N.Y. Mar. 30, 2018). I am also not persuaded by Defendants' argument that the agreement is unenforceable because it was "made without consideration." (Mem. 22.) Defendants received consideration in the form of Plaintiff's labor. Plaintiff further pleads that Defendants failed to perform by never paying him the agreed-upon salary during his five years and five months of employment. (Am. Compl. ¶ 84.) Plaintiff was financially damaged by Defendants breach because he did not receive the compensation he was promised. Plaintiff plausibly alleges each element of a breach of contract claim.

Defendants next argue that the agreement was not a contract, but instead a conditional promise. (Mem. 22–23.) "[C]onditions [precedent] are not favored under New York law, and in the absence of unambiguous language, a condition [precedent] will not be read into the agreement." *Ginnett v. Computer Task Group*, 962 F.2d 1085, 110 (2d Cir. 1992). As pled, the agreement to pay Plaintiff "when WPM could afford to do so," (Am. Compl. ¶ 24), does not

12

contain the "unmistakable language" required for a condition precedent, *Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (citation omitted). Nor does the language contain a "caption or otherwise label the . . . provision as a 'condition precedent,'" or "employ any recognized linguistic conventions of condition— such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to.'" *Id.* (internal quotation marks omitted). The contractual term "when" can be interpreted to be a duration of time in which a party is obligated to perform (*i.e.*, WPM must pay Plaintiff at some time after WPM can afford to do so), not necessarily a condition precedent. *Cf. Rest. Creative Concepts Mgmt., LLC v. Ne. Rest. Dev., LLC*, 920 N.Y.S.2d 816, 817 (3d Dep't 2011) (declining to find condition precedent from contractual language determining the term of the contract in relation to some future event because no other language indicating intent to create a condition). Because "the law of contracts disfavors conditions if there is doubt as to the meaning of contractual language," *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 654 (2d Cir. 1994) (citation omitted), Defendants' motion to dismiss Plaintiff's claim for breach of contract is DENIED.

### C. *Unjust Enrichment*

A plaintiff alleging unjust enrichment under New York law must adequately plead that: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc*., 373 F.3d 296, 306 (2d Cir. 2004). "New York law 'precludes unjust enrichment claims whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact.'" *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017) (citing *Green Tree*

*Servicing, LLC v. Christodoulakis*, 689 F. App'x 66, 70 (2d Cir. 2017)). However, a plaintiff may proceed on both theories when "a bona fide dispute exists as to the existence of the contract." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (citation omitted); *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458-59 (S.D.N.Y. 2016) ("While the existence of a contract generally bars recovery based on the quasi-contract theory of unjust enrichment, a claim for unjust enrichment may survive a motion to dismiss where the plaintiff challenges the contract's validity." (citations omitted)).

Although the Amended Complaint pleads the existence of an oral contract, Defendants' motion to dismiss explains that Defendants dispute the allegation that there was an agreement for Plaintiff to be paid "when WPM could afford to do so." (Mem. 22.) Accordingly, because there is a dispute concerning the existence of a contract, I will allow Plaintiff to plead unjust enrichment in the alternative to his breach of contract claim, Defendants' motion to dismiss the unjust enrichment claim is DENIED.

### D. *Promissory Estoppel*

Defendants seek to dismiss Plaintiff's promissory estoppel claim for failure to state a claim pursuant to Rule 12(b)(6). Under New York law, a claim for promissory estoppel requires "(1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." *MatlinPatterson ATA Holdings LLC v. Fed. Express Corp.*, 929 N.Y.S.2d 571, 575 (1st Dep't 2011). Defendants repeat one of the arguments raised in seeking to dismiss Plaintiff's breach of contract claim and assert that there is no clear and unambiguous promise because there is a condition precedent. For the reasons explained *supra* § IV.B., this argument is unpersuasive.

Much like a claim for unjust enrichment, a claim for promissory estoppel typically cannot

14

co-exist with a claim for breach of contract. *M&B Props. 3 Bushey Lane VT, LLC v. CWCapital Asset Mgmt. LLC*, No. 18-CV-4187, 2019 WL 4805149, at *6 (E.D.N.Y. Sept. 30, 2019) (explaining that where "a breach of contract claim and a promissory estoppel claim are pled in the alternative, if the court finds that a contract exists, the promissory estoppel claim must fall" (internal quotation marks omitted)). However, "it is also well-established that plaintiffs who allege the existence of a valid contract may nonetheless plead the alternative theories of promissory estoppel and breach of contract when the defendant does not concede the enforceability of such contract." *Lamda Sols. Corp. v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 214 (S.D.N.Y. 2021). Because Defendants dispute the existence of a valid, enforceable contract, I will allow Plaintiff to continue this claim in the alternative to his claim for breach of contract. Accordingly, Defendants' motion to dismiss the claim of promissory estoppel is DENIED.

### E. *Fraudulent Inducement*

Defendants seek to dismiss Plaintiff's claim for fraudulent inducement for failure to state a claim pursuant to Rule 12(b)(6). Under New York law, a claim for fraudulent inducement requires that

> (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss.

*Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618, 622 (2d Cir. 2012) (cleaned up).

Plaintiff does not plead any facts that support a finding that Defendants had an intent to defraud him. The closest that Plaintiff reaches is the conclusory assertion that "[t]he promise and

15

representations were made with a preconceived and undisclosed intention of not performing the promise." (Am. Compl. ¶ 108.) "[M]ere failure to perform a previous promise is alone insufficient, as a matter of law, to raise an inference of intent to defraud at the time the promise was made." *Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 225 (S.D.N.Y. 2007). Defendants' motion to dismiss Plaintiff's fraudulent inducement claim is GRANTED.

### F. *Defendant Johansen*

Defendants assert that all claims against Johansen must be dismissed because "[a] fundamental purpose of incorporation is to protect the owner, president, or CEO from individual liability." (Mem. 28.) In response, Plaintiff asserts that Johansen is subject to an exception to general principles of limited liability companies because

> the ten members with the largest percentage ownership interest, as determined as of the beginning of the period during which the unpaid services referred to in this section are performed . . . of any foreign limited liability company, when the unpaid services were performed in the state, shall jointly and severally be personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees, for services performed by them for such limited liability company.

(Opp'n 21 (quoting N.Y. Ltd. Liab. Co. L. § 609).) In their reply brief, Defendants do not address Plaintiff's argument, therefore I consider Defendants' argument as to Defendant Johansen to be abandoned. *See Doe v. Indyke*, 465 F. Supp. 3d 452, 466 (S.D.N.Y. 2020) ("Defendants do not respond to this argument in reply, and the Court deems them to have abandoned the argument."). Accordingly, Defendants' motion to dismiss all claims against Johansen is DENIED.

### G. *Leave to Amend*

Plaintiff has not sought leave to amend. "But even when a party does not ask for leave to amend, the Court may grant leave to amend sua sponte." *In re Garrett Motion Inc. Sec. Litig.*, No. 20-CV-7992, 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022) (internal quotation marks

16

omitted) (collecting cases). "When deciding whether to sua sponte grant leave to amend, 'courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility.'" *JoySuds, LLC v. N.V. Labs, Inc.*, 668 F. Supp. 3d 240, 262 (S.D.N.Y. 2023) (quoting *Morales v. Kimberly-Clark Corp.*, No. 18-CV-7401, 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020)).

Upon consideration of these factors, I grant Plaintiff leave to amend. There is no indication that there is undue delay, bad faith or dilatory motive, or undue prejudice to the opposing party. Plaintiff filed the operative Amended Complaint, (Doc. 12), after the first motion to dismiss was filed, (Doc. 4), but before any opposition or reply briefs were filed, so I do not find any repeated failures to cure deficiencies. Nor do I find futility regarding the claim for fraudulent inducement.

## V.        Conclusion

For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Defendants' motion to dismiss the claim for fraudulent inducement is GRANTED; the motion to dismiss the FLSA and NYLL claims are GRANTED IN PART and DENIED IN PART; and the motion with regard to Plaintiff's remaining claims is DENIED.  Plaintiff is granted leave to file a second amended complaint no later than 30 days from the date of this Opinion & Order.  Defendants shall answer or otherwise respond to the second amended complaint within twenty-one days from the date that it is filed.

SO ORDERED.

Dated: February 4, 2025
     New York, New York

_____
Vernon S. Broderick
United States District Judge

19